**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**JA-MO KIMU SMITH,**

**Plaintiff,**

**v.**

**SCOTT ALAN ST. CLAIR and SCOTT HUFF,**

**Defendants.**

**Civil Action No.: MJM-24-702**

# MEMORANDUM OPINION

Self-represented Plaintiff Ja-Mo Kimu Smith, who is currently incarcerated at Maryland Correctional Institution – Hagerstown, filed this civil rights action against defendants Scott St. Clair and Scott Huff of the Hagerstown Police Department. ECF No. 5. Defendants have renewed their motion for summary judgment.[1] ECF No. 38. Smith was notified of his right to respond, *see* ECF Nos. 40, 43, but, to date, he has not done so. A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons explained below, the Court will grant Defendants' motion for summary judgment.

## I. ALLEGATIONS IN THE AMENDED COMPLAINT

Smith states that on May 27, 2023, Alyssa Tetlow, a "companion" of his, asked him to pick her up for work at a bar called "Vibez." ECF No. 5 at 4. Smith states that he parked outside of her house at 12:20 a.m. "before going to her job." *Id.* Smith fell asleep in his car and was awakened by Officer Huff of the Hagerstown Police at 2:44 a.m. asking if he was okay. *Id.* Smith

[1] Defendants also filed a Motion to File Physical Exhibit Under Seal. ECF No. 44. On December 2, 2025, the Court directed Defendants to file this additional video evidence under seal because it contains inadvertent images of Smith's genitalia. ECF No. 43. Accordingly, their motion to seal will be granted. Defendants filed a status report on February 4, 2026, informing the Court that Smith had been able to view all of the video exhibits submitted. ECF No. 46.

explained he was waiting for a friend and provided Huff his driver's license. He also explained that he had two prescribed Suboxone strips in the car. *Id.* Officer St. Clair asked Smith to exit his vehicle and searched him for weapons. *Id.* Smith states that this search was for officer safety and he was not under arrest, which he asserts St. Clair testified to later. *Id.* at 5. According to Smith, however, St. Clair proceeded to fondle his genitals several times and placed him in handcuffs despite not finding a weapon and Smith denying that he was in possession of one. *Id.* Smith seeks monetary damages for violation of his constitutional rights. *Id.*

## II. POLICE REPORT

In support of their motion, Defendants attach a certified "Offense/Incident Report" and both Defendants' affidavits that the report is an accurate reflection of the circumstances leading to Smith's arrest. *See* ECF Nos. 38-2 through 38-5. The report states that on May 27, 2023, at approximately 2:44 a.m., Defendants observed a parked silver Mazda van; the brake lights were on, but the vehicle did not appear to be running. ECF No. 38-3 at 1. Defendants had noted the car in the same state an hour prior but could not see if anyone was inside the car due to the window tint. *Id.* at 1–2.

Officer Huff checked the registration on the vehicle, which showed that it had expired in April 2023, but the physical tags on the van's rear plate indicated that the registration expired in July 2023. *Id.* at 2. Huff concluded that the month tab had been fraudulently placed. *Id.* Officer St. Clair drove up alongside the driver's side of the van, and, using a "spotlight," Defendants observed a man in the driver's seat with his head down. *Id.* Defendants then approached the van on foot; through the driver's side window, Officer St. Clair saw a blue and white package labeled "suboxone" in the center console. *Id.* "Suboxone is a controlled dangerous substance of schedule 3." *Id.*

Officer St. Clair moved to the passenger side of the van and knocked on the window. *Id.* The driver began to wake up, Officer St. Clair announced himself as police, and the man rolled down the window. *Id.* St. Clair asked the man if he was okay, to which he responded, "I am waiting for my girl." *Id.* Smith was then identified by his driver's license. *Id.* Smith denied taking any medication but then admitted to possessing suboxone when asked, which was already in plain view. *Id.* Officer Huff requested that Smith exit the vehicle and asked whether he had any weapons. *Id.* Smith denied having any weapons and consented to Huff searching him for weapons. *Id.* Huff instructed Smith to face away from him and put his hands on his head; Huff conducted his search and "felt a rock hard item that is not consistent with the human anatomy between Smith[']s legs," which he believed to be contraband. *Id.*

Smith was then detained despite his denial that there was anything between his legs. *Id.* Officer Huff along with Officers Larrain and Stoner walked Smith to Officer St. Clair's vehicle and "out of the view [of] any citizens" to search him further. *Id.* Officer Huff "removed a knotted sandwich style baggie containing an off-white powder that was approximately the size of a tennis ball from inside Smith's underwear." *Id.* Based on his experience, Officer St. Clair believed the powder to be fentanyl, a schedule 2 controlled substance. *Id.* The bag of powder weighed approximately 43 grams, which St. Clair believed to be sufficient for Smith to be in possession with the intent to distribute. *Id.* at 2-3. Smith's vehicle was then searched, and Defendants found a digital scale, two cell phones, and two packages of suboxone. *Id.* at 3. Smith was then transported to the Washington County Detention Center. *Id.*

## III. LEGAL STANDARD

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … , admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 252. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is appropriate. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to … the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

## IV. DISCUSSION

Defendants argue that they are entitled to summary judgment on Smith's constitutional claims and to the extent he raises a claim for defamation of character. ECF No. 38-1. Smith does not specify the specific constitutional right he believes was violated, but the Court construes his allegations as a claim for unreasonable search under the Fourth Amendment.

The Fourth Amendment guarantees, among other things, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend IV. It applies to the States through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). A "search conducted inside [a defendant's] underwear is properly characterized as a strip search[.]" *United States v. Edwards,* 666 F.3d 877, 882 (4th Cir. 2011). In evaluating the reasonableness of such a search, the court examines the search "in its complete context and consider[s] the following factors: 1) the place in which the search was conducted; 2) the scope of the particular intrusion; 3) the manner in which the search was conducted; and 4) the justification for initiating the search." *Id.* at 883 (citation omitted).

Defendants argue that the search was justified, limited, and conducted in a non-threatening and private manner, and therefore they are entitled to judgment in their favor. ECF No. 38-1 at 6. In addition to the submitted police report, Defendants also rely on the body-worn camera footage taken of their interaction with Smith. Having reviewed the video exhibits, the Court finds that the video evidence corroborates the description of the search provided by Defendants in their affidavits and police report. The search was conducted behind a police vehicle while Smith was surrounded by officers. The video footage does not show any persons within the vicinity who were looking at Smith during the search, and even if there were, Smith and, specifically, his genitals were hidden from public view by the police officers and their vehicle.

There is no genuine dispute that the search of Smith was justified and limited. Smith was asked to exit his vehicle after suboxone was seen in the console of the vehicle in plain view and Defendants confirmed that the vehicle registration was expired, despite what was displayed on the tags of the vehicle. Officer Huff pat Smith down after he exited the vehicle, at which point Huff felt something hard between Smith's legs. Smith denied that he was carrying anything and that

Huff had only felt his genitals. But, believing that what he felt was not consistent with human anatomy, Huff moved Smith away from his car to behind a police vehicle to conduct a further search. The additional search was confined to the inside of Smith's shorts and underwear. The video shows that Huff unbuckled the fanny pack around Smith's waist and unbuttoned his shorts to inspect the area in which he had felt the hard object. In a matter of seconds, after Smith was instructed to unclench his legs, Huff discovered, with gloved hands, what appeared to be a sandwich bag containing white powder between Smith's legs. Huff removed it, and Smith's shorts were refastened. Smith was then placed in the back of the police car while the officers weighed the suspected fentanyl. At no time did the search exceed what was necessary to identify the object felt during the pat down, nor was it conducted in a threatening manner. Furthermore, while the search did occur outside on a public sidewalk, Smith was hidden from view at all times. The Court also notes that it was approximately 3:00 a.m. at the time of the search and thus dark, further protecting Smith from public view. No reasonable jury could find that Defendants' search was not reasonable. Therefore, the Court finds, as a matter of law, that it did not violate the Fourth Amendment, and Defendants are entitled to summary judgment.

To the extent Smith sought to bring a defamation claim against Defendants under state law, it will be dismissed without prejudice. Where all federal claims have been dismissed, and diversity jurisdiction is lacking, a federal court may "decline to exercise supplemental jurisdiction" over remaining state-law claims. *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012) (citing 28 U.S.C. § 1367(c)). In the circumstances of this case, the Court finds that principles of judicial efficiency and comity weigh against this Court's exercise of supplemental jurisdiction over any remaining defamation claim. *See Bishop v. Cnty. of Macon*, 620 F. App'x 148, 150 (4th Cir. 2015) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)) ("In deciding whether

to exercise supplemental jurisdiction, a court should consider 'the values of judicial economy, convenience, fairness, and comity.'").

## V. CONCLUSION

For the reasons stated herein, Defendants' renewed motion for summary judgment is granted. A separate Order follows.

August 31, 2026___________
Date

_____/S/__________________
Matthew J. Maddox
United States District Judge